FILED

2015 Sep-30  AM 08:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| OLIVIA OSBORNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  2:13-cv-01991-SGC |
| | ) | |
| VINCENT CHEATHAM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

The complaint in this matter alleges that Plaintiff, Olivia Osborne, was repeatedly harassed, attacked, and raped by Vincent Cheatham, a prison guard at the Birmingham Work Release Center ("BWRC"), while Plaintiff was incarcerated there.  The complaint asserts claims against Cheatham, Shirley Smith, the warden of BWRC, and Kim Thomas, the Commissioner of the Alabama Department of Corrections ("ADOC") at the time.  This case is before the court on the motion to dismiss filed by Defendants, Warden Smith and Commissioner Thomas.  (Doc. 2). Because the parties have not consented to dispositive magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c), the undersigned prepared this report and recommendation.  As explained below, the undersigned concludes the motion to dismiss is due to be granted in part and denied in part.

1

## I.    FACTS

In evaluating a motion to dismiss under Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE, the court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Found. Fin. Grp., LLC,* 551 F.3d 1223, 1224 (11th Cir. 2008). Accordingly, the facts set out below are those alleged in or reasonably inferred from the complaint.[1]

At the time relevant to this lawsuit, Plaintiff was an Alabama state inmate. (Doc. 1 at 2).  Plaintiff began serving time at the BWRC on January 26, 2011. (Doc. 1 at 3).  The complaint alleges that Cheatham, who was "employ[ed] as an Alabama Department of Corrections prison guard," (Doc. 1 at 4; *see id.* at 2) began sexually harassing Plaintiff within two weeks of her arrival (*Id.* at 3).  For the next three months Cheatham: (1) made sexual advances toward Plaintiff; (2) watched Plaintiff in the shower; (3) asked Plaintiff for money; (4) forced Plaintiff to take van rides with him; and (5) made Plaintiff cook for him.  (Doc. 1 at 3).  Cheatham threatened to file disciplinary reports if Plaintiff refused to comply with his various demands.  (Doc. 1 at 3).

---

[1] Further explanation is warranted for the benefit of Cheatham, who is appearing *pro se*.  This report and recommendation accepts the facts alleged in the complaint only for the purposes of deciding the motion to dismiss.  These facts are not established for any other purposes, and will not be accepted as true during subsequent proceedings.

The complaint alleges Cheatham's conduct intensified and he sexually assaulted Plaintiff twice at the BWRC in May 2011. The complaint alleges that, on May 6, 2011, Cheatham violently shoved Plaintiff against a meat locker, "sexually groped" her, and tried to kiss her. (Doc. 1 at 3). Plaintiff suffered a bruised back as a result of this assault. (Doc. 1 at 3). The following day while in the BWRC's upstairs TV room, Cheatham "forcefully attempted to take off Plaintiff's pants with one hand" while holding a prophylactic in the other hand. (Doc. 1 at 3). This second assault ended when another inmate entered the room. (Doc. 1 at 3).

The complaint alleges Plaintiff "immediately" reported these two incidents to Warden Smith. (Doc. 1 at 3). Plaintiff also alleges she filed a report concerning the incidents but that the report was altered by an unspecified individual. (Doc. 1 at 3). The altered report indicated only that Cheatham attempted to kiss Plaintiff. (Doc. 1 at 3). The complaint also alleges that Smith transferred Cheatham to another facility in an attempt to cover up the assault. (Doc. 1 at 3). Plaintiff subsequently reported the assault to Scott Wells with Internal Affairs. Wells visited the BWRC and investigated the report, but "nothing came of the investigation." (Doc. 1 at 3).

While incarcerated at the BWRC, Plaintiff worked at a Best Western Hotel from 2 p.m. until 11 p.m. (Doc. 1 at 3). As Plaintiff ended her shift on June 24,

2011, she took the garbage to a dumpster located within a gated enclosure. (Doc. 1 at 3). When Plaintiff entered the enclosure, Cheatham blocked the exit with his vehicle, grabbed Plaintiff, and forced her into the backseat. (Doc. 1 at 3). Cheatham forcefully removed Plaintiff's clothing before "brutally rap[ing] Plaintiff through intercourse and sodomy." (Doc. 1 at 3). Plaintiff sustained bruises to her chest and arms as a result of the attack. (Doc. 1 at 3).

Despite being transferred to a different facility, Cheatham continued to harass Plaintiff. (Doc. 1 at 3). Warden Smith was aware of Cheatham's continued harassment of Plaintiff and, on October 6, 2011, ordered Plaintiff to be placed on birth control medication. (Doc. 1 at 3-4). Plaintiff was originally told that she was placed on birth control for medical reasons. (Doc. 1 at 4). When Plaintiff explained she did not suffer from medical conditions treatable by birth control, Warden Smith told Plaintiff the birth control was prescribed to prevent pregnancy. (Doc. 1 at 4).

On October 14, 2011, Cheatham arrived at the Best Western during Plaintiff's shift. (Doc. 1 at 4). Plaintiff asked Cheatham to leave, but he threw her against a kitchen wall, pressed his forearm against her neck, removed her clothes, and raped Plaintiff through intercourse. (Doc. 1 at 4). Plaintiff reported the October 14, 2011 rape to a non-party ADOC lieutenant on October 15, 2011, and

to Warden Smith on October 19, 2011.  (Doc. 1 at 4).  Warden Smith told Plaintiff "nothing could be done."  (Doc. 1 at 4).

Cheatham again attacked Plaintiff at the Best Western on October 28, 2011, but Plaintiff was able to escape after Cheatham "snatched hair out of her head." (Doc. 1 at 4).  Late on October 29, or early on October 30, 2011, Cheatham visited the Best Western, claiming to be conducting a job check.  (Doc. 1 at 4).  Cheatham again forcibly raped Plaintiff through intercourse, this time in the stairwell.  (Doc. 1 at 4).  The complaint alleges Cheatham's last act of harassment occurred on July 15, 2012.

The complaint's only allegation regarding Commissioner Thomas is that he "failed to adequately take precautions in the hiring and retention of prison personnel and failed to adequately train and supervise prison personnel." (Doc. 1 at 5).  The complaint further states "the conduct of Defendant[] . . . Thomas constitutes negligence under state law."  (Doc. 1 at 5).

Based on the facts set forth above, Plaintiff filed the complaint on October 29, 2013, asserting claims for: (1) assault and battery against Cheatham (2) negligence against Warden Smith and Commissioner Thomas; (3) intentional infliction of emotional distress against all defendants; (4) false imprisonment claims against Cheatham; (5) negligent training and supervision against Warden Smith and Commissioner Thomas; (6) sexual harassment against Cheatham; (7)

Eighth Amendment claims for cruel and unusual punishment against Cheatham; (8) Eight Amendment claims for deliberate indifference against all defendants; and (9) Fourth Amendment claims against Cheatham.  (Doc. 1 at 5-9).  All claims are asserted against the defendants in their respective official and individual capacities. (*Id.*).

## II.   STANDARDS OF REVIEW

To the extent the motion to dismiss is based on failure to state a claim, Rule 8 of the FEDERAL RULES OF CIVIL PROCEDURE merely requires a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  However, the complaint must contain enough facts to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id.* at 555.  Likewise, pleadings based solely on "labels and conclusions" and/or "naked assertion[s]" unsupported by factual allegations are insufficient.  *Id.* at 555-556.

To overcome a motion to dismiss for failure to state a claim, a complaint must "state a claim to relief that is plausible on its face."  *Twombly,* 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility

standard does not amount to a probability requirement, but the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim requires "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support it. *Twombly,* 550 U.S. at 556. In applying the plausibility standard, a court must assume the veracity of well-pleaded factual allegations. However, legal conclusions couched as factual allegations are not entitled to the same assumption of veracity. *Iqbal*, 556 U.S. at 678. If the well-pleaded facts, accepted as true, do not state a plausible claim, the claim is due to be dismissed. *Id.*

To the extent the motion to dismiss challenges federal subject matter jurisdiction, it invokes Rule 12(b)(1) of the FEDERAL RULES OF CIVIL PROCEDURE. A facial attack under Rule 12(b)(1) requires a legal evaluation of whether the complaint "sufficiently allege[s] a basis of subject matter jurisdiction." *McElmurray v. Consol. Gov't of August-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

## III.   DISCUSSION

Cheatham, who is appearing *pro se*, has filed an answer (Doc. 16), and the claims against him are not the subject of any pending motion. Accordingly, the claims that are the subject of the pending motion to dismiss are the claims against Commissioner Thomas and Warden Smith for negligence, outrage, negligent

training and supervision, and deliberate indifference.  These claims are addressed in turn, below.

### A. The Complaint Does Not State a Claim Against Commissioner Thomas

As noted above, the only allegation in the fact section of the complaint regarding Commissioner Thomas is that he "failed to adequately take precautions in the hiring and retention of prison personnel and failed to adequately train and supervise prison personnel."   (Doc. 1 at 5).  The complaint further contends this conduct "constitutes negligence under state law."  (*Id.*).  The individual counts aimed at Commissioner Thomas then recite the legal elements of each claim; no additional facts are alleged.  (*Id.* at 5-9).

The complaint is devoid of factual allegations against Commissioner Thomas.  Indeed, the only allegations against Commissioner Thomas are not factual in nature.  Instead, as Defendants contend, these statements are merely legal conclusions which cannot overcome a motion to dismiss under *Iqbal*.

In response, Plaintiff relies upon Alabama law and ADOC regulations establishing responsibilities, policies, and procedures regarding custodial sexual misconduct and offenses. (Doc. 4 at 4).  In particular, Plaintiff points to Alabama Administrative Regulation 454, which states the "Commissioner shall be responsible for the ADOC's compliance with federal and state laws relating to" the Prison Rape Elimination Act of 2003 ("PREA").  (Doc. 4 at 4).  Plaintiff also relies

on Alabama law prohibiting ADOC employees from engaging in sexual activity with ADOC inmates.  (Doc. 4 at 4 (*citing* ALA. CODE § 14-11-30, *et seq.*)).  As Plaintiff would have it, these laws and regulations, together with the conclusory statement that Commissioner Thomas failed to properly hire, train, and supervise personnel, render plausible the claims against Commissioner Thomas.  (Doc. 4 at 5).

The flaw fatal to Plaintiff's contention is that the complaint is devoid of factual allegations regarding Commissioner Thomas.  The presence of statutes and regulations prohibiting ADOC personnel from raping prisoners does not automatically make Commissioner Thomas liable for every prisoner rape that occurs.  *See Hardy v. Thomas*, No. 14-031-RDP, 2014 WL 6972095 * (N.D. Ala. opinion entered Dec. 9, 2014) (granting motion to dismiss claims against Commissioner Thomas and finding prisoner alleging rape by ADOC officer failed to state plausible claims, notwithstanding the statutory and regulatory prohibitions on raping prisoners).  Accordingly, none of the claims asserted against Commissioner Thomas are plausible, and they are due to be dismissed under Rule 12(b)(6) on that basis.[2]

---

[2] Because the complaint fails to state a claim against Commissioner Thomas, the remaining discussion refers to arguments applicable to the claims asserted against Warden Smith.  It will be noted where the discussion would apply to the claims against Commissioner Thomas.

9

B. <u>**Claims Asserted Against Warden Smith**</u>

The claims against Warden Smith and the law applicable to each claim is discussed in turn below.

### 1.  Sovereign Immunity Bars Official Capacity Claims

Each claim asserted in the complaint names Defendants in their individual and official capacities and seeks monetary damages, including punitive damages. The Eleventh Amendment prohibits individuals from bringing lawsuits against a state for monetary damages. U.S. CONST. amend. XI.  This sovereign immunity extends to claims against state employees in their official capacities.  *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1994).  Moreover, a federal court lacks jurisdiction to hear claims barred by sovereign immunity.  *Doe v. Moore*, 410 F.3d 1337, 1349 (11th Cir. 2005).

Plaintiff contends the state of Alabama has waived sovereign immunity as to Commissioner Thomas based on the aforementioned regulation requiring the ADOC commissioner to effectuate the PREA.  (Doc. 4 at 16).  However, this regulation does not constitute the State's unequivocal indication that it intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment.  *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999).  Accordingly, all claims asserted against Warden Smith in her official capacity are due to be dismissed as barred by sovereign

immunity.[3]  *See Pennhurst State Sch. & Hosp. v. Holderman,* 465 U.S. 89, 100

(1984); *Chandler v. Ala. Dept. of Corr.*, No. 13-447-LSC-HGD, 2014 WL

4049981, *11 (N.D. Ala. Aug. 5, 2014).   While Cheatham has answered, the

undersigned will also recommend *sua sponte* dismissal of any official capacity

claims against him.

### 2.  Warden Smith Is Not Entitled to State-Agent Immunity

Warden contend Plaintiff's state-law claims for negligence and negligent

supervision are barred by state-agent immunity.  In *Ex parte Cranman,* 792 So. 2d

392 (Ala. 2000),[4] the Alabama Supreme Court established the following test for

state agent immunity:

> A State agent shall be immune from civil liability in his or her
> personal capacity when the conduct made the basis of the claim
> against the agent is based upon the agent's
>
> > (1) formulating plans, policies, or designs; or
> >
> > (2) exercising his or her judgment in the administration of a
> >     department or agency of government, including, but not
> >     limited to, examples such as:
> >
> > > (a) making administrative adjudications;
> > >
> > > (b) allocating resources;

---

[3] For the same reasons, even if the complaint stated a plausible claim against Commissioner
Thomas, any official capacity claims against him would also be barred by sovereign immunity.

[4] *Cranman* is a plurality opinion which was later adopted by a majority of the Supreme Court of
Alabama in *Ex parte Butts,* 775 So. 2d 173 (Ala. 2000); *see also Fleming v. Dowdell*, 434 F.
Supp. 2d 1138, 1162 (M.D. Ala. 2005) *aff'd*, 182 F. App'x 946 (11th Cir. 2006).

(c) negotiating contracts;

(d) hiring, firing, transferring, assigning, or supervising personnel; or

(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or

(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officer's arresting or attempting to arrest persons; or

(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity

(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Cranman*, 792 So. 2d at 405 (emphasis in original).

When a defendant raises state-agent immunity, courts apply the *Cranman* rule through a two-part, burden-shifting analysis. *Ex parte Estate of Reynolds*, 946

So. 2d 450, 452 (Ala. 2006); *see Fleming,* 434 F. Supp. 2d at 1163.  A defendant bears the initial burden of demonstrating that the claims arise from a function that would entitle them to immunity.  *Ex parte Estate of Reynolds,* 946 So. 2d at 452. If a defendant satisfies this burden, the burden then shifts to the plaintiff, who must establish the defendant's conduct falls under one of the exceptions listed in *Cranman*—"that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Id.*

In response to Warden Smith's invocation of state-agent immunity, Plaintiff relies on her allegations that Warden Smith: (1) transferred Cheatham to a different facility to cover up the initial sexual assault; (2) told Plaintiff nothing could be done when Plaintiff reported Cheatham had raped her; and (3) placed Plaintiff on birth control in order to prevent pregnancy. (Doc. 4 at 6-7). Under these circumstances, the undersigned concludes Plaintiff has sufficiently alleged that Warden Smith acted willfully, maliciously, beyond her authority, or under a mistaken interpretation of the law.  *See N.C. v. Caldwell*, 77 So. 3d 561, 566 (Ala. 2011) (reversing summary judgment for teacher on state-agent immunity grounds where the plaintiff student alleged rape by student aide and that teacher had ignored previous sexual harassment by student aide).  Accepting the complaint's allegations as true, Warden Smith is not entitled to state-agent immunity regarding the claims of negligence or negligent entrustment asserted against her in her

individual capacity.[5]   Accordingly, the claims for negligence and negligent entrustment are not due to be dismissed on that basis.[6]

### 3. The State Law Claims Against Warden Smith Are Due to Be Dismissed Because She Was Not Cheatham's Employer

As the complaint acknowledges, Cheatham was employed by the ADOC as a prison guard. This fact requires dismissal of Plaintiff's state law claims against Warden Smith in her individual capacity.  As explained below, because the ADOC is Cheatham's employer: (1) Plaintiff cannot state a claim for negligent entrustment; and (2) the claims for negligence and outrage are time-barred.  After explaining the relevant Alabama law, each conclusion is discussed in turn.

In response to Warden Smith's various arguments regarding the impact of Cheatham's status as an ADOC employee upon the claim for negligent supervision, Plaintiff argues Warden Smith can be liable because she and Cheatham were engaged in a master-servant relationship.  (Doc. 4 at 8-9).  Plaintiff contends that dismissal under Rule 12(b)(6) would be inappropriate because she is entitled to present evidence of a master-servant relationship between Warden Smith and Cheatham.  (Doc. 4 at 9-10).  In support, Plaintiff cites a line of Alabama cases holding that whether a master-servant relationship exists depends upon the degree

---

[5] Defendants do not assert qualified immunity in response to the claim for outrage.  However, for the same reasons discussed above, any such defense would have failed.

[6] Because the complaint does not assert any factual allegations against Commissioner Thomas, the state law claims against him would be barred by state-agent immunity.

of control asserted by the alleged master over the alleged servant.  (Doc. 4 at 8-9) (citing *Lane v. Cent. Bank of Ala., N.A.*, 425 So. 2d 1098, 1100 (Ala. 1983); *Gossett v. Twin Cty. Cable T.V., Inc.*, 594 So. 2d 635, 639 (Ala. 1992); *Tyson Foods, Inc. v. Stevens*, 783 So. 2d 804, 808-09 (Ala. 2000)).

First, the cases upon which Plaintiff relies are factually and legally distinguishable from the instant case, in which it is uncontested that Cheatham was an ADOC employee.  *See Gossett*, 594 So. 2d at 639 (analyzing degree of control exercised by alleged employer where it was unclear whether individual was the defendant's employee or merely an independent contractor); *Tyson Foods, Inc. v. Stevens*, 783 So. 2d at 808-09 (same); *Lane,* 425 So. 2d at 1100 (liability of master for actions of servant "simply has no application under the facts of this case").

Moreover, the Alabama Supreme Court has held that the degree of control analysis "is dispositive only when the question is the limited one of whether an alleged servant is in fact a servant or, instead, an independent contractor." *Ware v. Timmons*, 954 So. 2d 545, 549 (Ala. 2006), *as modified on denial of reh'g* (Sept. 22, 2006).  Accordingly, the degree of control that Warden Smith may have exerted over Cheatham is irrelevant because it is undisputed that the ADOC was Cheatham's employer.  *Id.* at 549-50.  The undersigned concludes that, as alleged in the complaint, Cheatham was an ADOC employee.

a. <u>Warden Smith Cannot Be Held Liable For Negligent Training and Supervision of Cheatham</u>

"Under Alabama law, the tort theory of negligent hiring, retention, training, or supervision lies only against the employer of an 'incompetent' employee, not the co-employees or even the supervisors of the 'incompetent' employee." *Hill v. Madison Cty School Bd.*, 957 F. Supp. 2d 1320, 1342 (N.D. Ala. 2013). "Alabama law is clear that the tort of negligent supervision or training requires as an element the existence of a master-servant relationship. . . . A supervisor is not the master of a subordinate, nor is the subordinate the servant of the supervisor; rather, as Alabama cases make plain, the status of 'master' is restricted to one who is actually or essentially the employer of the servant." *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314-15 (S.D. Ala. 2001).

As explained above, the ADOC—not Warden Smith—was Cheatham's employer. Accordingly, because Alabama law recognizes a cause of action for negligent training or supervision only against an alleged tortfeasor's employer, this claim is due to be dismissed. *Moody v. Ala. Dep't of Transp.*, No. 12-4056-SLB-TMP, 2014 WL 5823635, *6-7 (N.D. Ala. Nov. 10, 2014) (granting Rule 12(b)(6) motion to dismiss ALDOT employee's claim of negligent supervision against supervisor because ALDOT was employer); *see Hill*, 957 F. Supp. 2d at 1344 (granting summary judgment on negligent supervision claim against tortfeasor's supervisors because the school board was the tortfeasor's employer); *Ott*, 169 F.

Supp. 2d at 1315 (granting summary judgment for city on claim of negligent supervision where claim was based on conduct of tortfeasor's supervisors).[7]

> b. The Claims Against Warden Smith For Negligence and Outrage are Time-Barred

Aside from mandating dismissal of Plaintiff's claim for negligent training and supervision, the conclusion that Warden Smith was not Cheatham's employer is also fatal to the claims for negligence and outrage. As an initial matter, it is unclear whether the complaint states a plausible claim under either theory against Warden Smith. As to negligence, it is difficult to construe the complaint as alleging negligence against Warden Smith that would not sound in negligent supervision—a claim that can only be asserted against Cheatham's employer. Regarding outrage, while the allegations regarding Warden Smith's conduct are outrageous in the colloquial sense, it is questionable whether the allegations constitute the tort of outrage under Alabama law. *See Moore v. Spiller Assoc. Furniture, Inc.*, 598 So. 2d 835, 836 (Ala. 1992). The court need not reach a conclusion regarding either claim because, as explained below, Plaintiff's claims for negligence and outrage are time-barred.

A two-year statute of limitations applies to Plaintiff's claims for negligence and outrage. ALA. CODE § 6-2-38(l). Dismissal under Rule 12(b)(6) is appropriate

---

[7] This rationale would apply equally to Commissioner Thomas even if Plaintiff had stated a plausible claim against him. Like Warden Smith, Commissioner Thomas is not Cheatham's employer

"if it is facially apparent that the claim is time-barred." *Baker v. Sanford,* 484 F. App'x 291, 292 (11th Cir. 2012) (per curiam); *see Oliver v. M/V BARBARY COAST*, No. 11-223, 2012 WL 2898055, *4 (S.D. Ala. June 13, 2012).

Because Warden Smith was not Cheatham's employer, Plaintiff cannot hold Warden Smith vicariously liable for Cheatham's conduct under Alabama tort law theories. The Alabama Supreme Court has held that "as a matter of law, the doctrine of respondeat superior does not hold supervisors, as co-employees, vicariously liable for the torts of their subordinates." *Ware*, 954 So. 2d at 555. While Plaintiff does allege independent conduct on the part Warden Smith, all such allegations concern conduct that occurred outside the two-year limitation period applicable to her claims for negligence and outrage. As explained below, because Warden Smith cannot be held vicariously liable for Cheatham's conduct, these claims are time-barred.

Warden Smith contends all of Plaintiff's claims against her accrued, at the latest, on October 19, 2011—the date on which Plaintiff reported Cheatham's October 14, 2011 rape to Warden Smith. (Doc. 2 at 20). This is also the latest date on which any allegations aimed at Warden Smith occurred. Plaintiff responds that, while the last allegation directed at Warden Smith's conduct occurred on October 19, 2011, the complaint alleges a pattern of harassment, attacks, and rapes by Cheatham that occurred until July 15, 2012. Accordingly, Plaintiff contends none

18

of her claims accrued until July, 2012, for purposes of the statute of limitations. (Doc. 4 at 17).

Plaintiff's argument is that Warden Smith's conduct constitutes a continuous tort. Under Alabama law, a continuous tort occurs when a defendant engages in "repeated tortious conduct which has repeatedly and continuously injured a plaintiff." *Moon v. Harco Drugs, Inc.,* 435 So. 2d 218, 220 (Ala. 1983). Where a continuous tort exists, the result "is analogous to continuing trespass in that the repeated actions of the defendants combined to create a single cause of action in tort." *Id.* at 221. The ultimate effect of a continuous tort is to extend the statute of limitations by compressing a protracted course of conduct into a single cause of action. *Id.* However, in order to recover for otherwise time-barred conduct, Plaintiff must allege some act of continuing tortious conduct by Warden Smith which would not be time-barred. *See Madison Cty. Commc'n Dist. v. BellSouth Telecom's, Inc.*, No. 06-1786, 2009 WL 9087783, *9 (N.D. Ala. Mar. 31, 2009).[8]

Plaintiff's allegations would be sufficient to invoke the continuous tort theory as to Cheatham. However, the focus here is Warden Smith's conduct. The complaint does not allege any actions by Warden Smith within the two years preceding October 29, 2013, the date Plaintiff filed the complaint. Accordingly,

---

[8] While the Alabama Supreme Court has described the tort of outrage as a continuous tort by its nature, *see Cont'l Cas. Ins. Co. v. McDonald,* 567 So. 2d 1208, 1215 (Ala.1990), that does not save Plaintiff's claim against Warden Smith, as explained below.

there are no timely allegations of conduct on the part of Warden Smith by which to revive the time-barred allegations.  Accordingly, the continuous tort theory does not render timely the claims against Warden Smith for negligence and outrage.

Turning to the accrual of the claims at issue here:

It is well established that the statute of limitations begins to run in favor of the party liable *from the time the cause of action accrues,* and the cause of action accrues *as soon as the party in whose favor it arises is entitled to maintain an action* thereon. . . .  This is so, even if at that time the *full amount* of damage may not be apparent.

*City of Birmingham v. Leberte*,  773 So. 2d 440, 444 n.1 (Ala. 2000) (punctuation and citations omitted; emphasis in original) (citing *Payne v. Ala. Cemetery Ass'n,* 413 So. 2d 1067, 1072 (Ala. 1982) and *Life Ins. Co. of Ga. v. Smith,* 719 So. 2d 797, 802 (Ala. 1998)).  Because Plaintiff cannot rely on Cheatham's conduct to hold Warden Smith liable under Alabama tort law, her claims accrued, at the latest, on October 19, 2011, when Warden Smith told Plaintiff nothing could be done in response to the October 14, 2011 rape.  Plaintiff cannot rely on a theory that her claims against Warden Smith accrued when she was subsequently damaged by Cheatham's continuing attacks because Warden Smith cannot be held vicariously liable for Cheatham's actions.

As to negligence, whatever damage Plaintiff suffered at the hands of Warden Smith occurred on October 19, 2011.  "The statute of limitations [for negligence] begins to run when the first injury, however slight, occurs, even though that injury

may later become greater or different." *Free v. Granger*, 887 F.2d 1552, 1555-56 (11th Cir. 1989) (citing *Moon,* 435 So.2d at 220).  As to outrage, "a cause of action alleging the intentional infliction of emotional distress does not accrue until the defendant's actions have caused the plaintiff severe distress, two of the four necessary elements for such a cause of action." *Martin v. Hodges Chapel, LLC,* 89 So. 3d 756, 763 (Ala. Civ. App. 2011); *see Holloway v. Am. Media, Inc.*, 947 F. Supp. 2d 1252, 1270 (N.D. Ala. 2013).  Again, whatever distress Plaintiff suffered from Warden Smith's conduct occurred, at the latest, on October 19, 2011, when she told Plaintiff "nothing could be done" in response to Cheatham's October 14, 2011 rape.

For the foregoing reasons, it is facially apparent from the complaint that the claims against Warden Smith for negligence and outrage are untimely.  These claims are due to be dismissed on that basis.

### 4.  The Claim For Deliberate Indifference Against Warden Smith Survives

Warden Smith contends Plaintiff's claim for deliberate indifference is due to be dismissed as time-barred and on the basis of qualified immunity.  For the reasons that follow, Plaintiff's claim for deliberate indifference should survive the motion to dismiss.

a.      The Complaint States a Claim For Supervisory Liability
        Against Warden Smith

Supervisory officials are not liable for § 1983 claims for the unconstitutional

acts of their subordinates solely on the basis of *respondeat superior* or vicarious

liability.  *See Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999); *Polk Cty. v.*

*Dodson,* 454 U.S. 312, 325 (1981); *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th

Cir. 2003); *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 n. 58 (1979) ("the

mere right to control, without any control or direction having been exercised and

without any failure to supervise, is not sufficient to support 42 U.S.C. § 1983

liability").

However, supervisors can be held vicariously liable for the actions of their

subordinates in § 1983 claims "either when the supervisor personally participates

in the alleged unconstitutional conduct or when there is a causal connection

between the actions of the supervising official and the alleged constitutional

deprivation."  *Cottone*, 326 F.3d at 1360; *see Brown v. Crawford,* 906 F.2d 667,

671 (11th Cir.1990).  In *Douglas v. Yates,* 535 F.3d 1316 (11th Cir. 2008), the

Eleventh Circuit set forth the limited circumstances in which a causal connection

renders a supervisor liable on a § 1983 claim.  The causal connection can be

established "when facts support an inference that the supervisor directed the

subordinates to act unlawfully or knew that the subordinates would act unlawfully

and failed to stop them from doing so." *Id.* at 1322 (*citing West v. Tillman,* 496 F.3d 1321, 1328-29 (11th Cir. 2007).

Here, the complaint alleges that, following Cheatham's initial sexual assaults at the BWRC, Plaintiff immediately reported the events to Warden Smith.   In response, Warden Smith transferred Cheatham to a different facility to "cover-up" the assaults.  The complaint also alleges Warden Smith was aware of Cheatham's ongoing harassment of Plaintiff and as a result, on October 6, 2011, placed her on birth control to prevent pregnancy.  Finally, the complaint alleges Plaintiff reported to Warden Smith on October 19, 2011, that Cheatham had raped her at the Best Western five days earlier.   In response, Warden Smith told Plaintiff "nothing could be done."  (Doc. 1 at 4).  Following this exchange, the complaint alleges Plaintiff suffered two more attacks, including another rape at the hands of Cheatham, and that Cheatham continued to harass her until July 15, 2012.   Under these circumstances, the complaint clearly supports an inference that Warden Smith "knew that [Cheatham] would act unlawfully and failed to stop [him] from doing so." *Douglas,* 535 F.3d at 1322.  Accordingly, the complaint alleges "a causal connection between the actions of [Warden Smith] and the alleged constitutional deprivation." *Brown*, 906 F.2d at 671.[9]

---

[9] Because the complaint does not make any allegations regarding Commissioner Thomas, it fails to allege a causal connection with Cheatham's conduct.  This serves as an independent basis on which to dismiss the deliberate indifference claim against Commissioner Thomas.

b.      The Deliberate Indifference Claim Is Not Time-Barred

"[C]laims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *Crowe v. Donald*, 528 F.3d 1290, 1292 (11th Cir. 2008).  In Alabama, the applicable limitations period is two years.  *Powell v. Thomas*, 643 F.3d 1300, 1303 (11th Cir. 2011).  While Alabama law provides the statute of limitations applicable to Plaintiff's § 1983 claims, "[f]ederal law determines when a federal civil rights claim accrues." *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996).  Under federal law, a cause of action does not accrue for statute of limitations purposes "until the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003).  Determining when an action accrues "requires a court first to identify the alleged injuries, and then to determine when plaintiffs could have sued for them." *Rozar*, 85 F.3d at 562.

Here, Plaintiff reported the October 14, 2011 rape to Warden Smith on October 19, 2011, and Warden Smith stated "nothing could be done." (Doc. 1 at 4).  Plaintiff did not suffer the injuries that flowed from this alleged deliberate indifference until she was subsequently attacked by Cheatham on October 28, 2011, and raped by Cheatham on October 29 or 30, 2011.  Obviously, Plaintiff had

not suffered injuries from these later two attacks and could not have filed suit and obtained relief for the resulting damages until after the attacks occurred.   Because the last of these attacks occurred within the statutory period, on October 29 or 30, 2011, the claim for deliberate indifference against Warden Smith is not time-barred on its face.  Whether the continuing violation theory—or some other theory—will allow the plaintiff to rely on otherwise time-barred allegations during subsequent proceedings can be addressed by the parties at summary judgment or, if necessary, via pre-trial motions.

For all of the foregoing reasons, Plaintiff's claim for deliberate indifference against Warden Smith in her individual capacity is not due to be dismissed as untimely because it is not "facially apparent that the claim is time-barred." *See Baker*, 484 F. App'x at 292.

### c.        Warden Smith Is Not Entitled to Qualified Immunity

Warden Smith argues qualified immunity bars Plaintiff's § 1983 individual capacity claim for deliberate indifference.  (Doc. 2 at 15-17).  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To be eligible for qualified immunity, an official must

establish they were acting within their discretionary authority.  *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007); *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).  Courts employ a two-prong test to determine whether officials acted within their discretionary authority, inquiring whether the defendant: (1) was performing a function that "*but for* the alleged constitutional infirmity, would have fallen within his legitimate job description"; and (2) executed that legitimate job-related function "in an authorized manner" or within his "arsenal of powers" or "range of decision."  *Holloman*, 370 F.3d at 1266-67 (emphasis in original).

If the defendant establishes that the actions were within the scope of discretionary authority, the burden shifts to the plaintiff to demonstrate the official was not entitled to qualified immunity.  *Skop*, 485 F.3d at 1136-37.  "To overcome qualified immunity, the plaintiff must satisfy a two prong test; he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."  *Holloman*, 370 F.3d at 1264. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'"  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Here, Warden Smith generally contends she was exercising discretionary authority and relies on Plaintiff's burden to establish that she is not entitled to qualified immunity.  (Doc. 2 at 17).  Even assuming Warden Smith's conduct constitutes an exercise of discretionary authority, the complaint alleges a violation of a clearly established constitutional right.  The Eighth Amendment "imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates." *Caldwell v. Warden, FCI Talladega*, 1748 F.3d 1090, 1099-100 (11th Cir. 2014) (quotations and punctuation omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1992)).  A prison official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (quotations and punctuation omitted).  The Eleventh Circuit acknowledges that repetitive or severe sexual assaults of a prisoner by a prison official can violate the Eight Amendment. *Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006).

The complaint alleges that when Plaintiff reported Cheatham's initial assaults, Warden Smith attempted to cover up the incidents by transferring Cheatham to a different facility.  The complaint also alleges Warden Smith was aware that despite transfer to a different facility, Cheatham continued to harass Plaintiff.  In response, Warden Smith placed Plaintiff on birth control with the

27

stated intention of preventing pregnancy. Finally, when Plaintiff reported the October 19, 2011 rape, Warden Smith stated that "nothing could be done." (Doc. 1 at 4). These actions constitute violations of Plaintiff's clearly established constitutional rights of which Warden Smith was subjectively aware.[10] Accordingly, qualified immunity does not bar Plaintiff's claim for deliberate indifference against Warden Smith in her individual capacity.

For the reasons stated above, Plaintiff's claim for deliberate indifference against Warden Smith in her individual capacity is not due to be dismissed.

## IV.   RECOMMENDATION

For all of the foregoing reasons, the undersigned **RECOMMENDS** the motion to dismiss filed by Warden Smith and Commissioner Thomas be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the motion is due to be **GRANTED** as to: (1) all claims asserted against any defendant—including Cheatham—in their respective official capacities; (2) all claims against Commissioner Thomas; and (3) all claims for negligence, outrage, and negligent hiring and supervision against Warden Smith. However, the motion to dismiss is due to be **DENIED** to the extent it seeks dismissal of the claim for deliberate indifference asserted against Warden Smith in her individual capacity.

---

[10] Because the complaint does not allege Commissioner Thomas was subjectively aware of any violation of Plaintiff's rights, he would be entitled to qualified immunity even if Plaintiff had stated a claim for deliberate indifference against him.

## IV.   NOTICE OF RIGHT TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2), FED. R. CIV. P., any party may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk.  Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal, except for plain error.  Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

**DONE** this 30th day of September, 2015.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE